## WATSON v. MUNDINGER.
### No. 1070.

Court of Appeal of Louisiana. First Circuit. Dec. 6, 1932.

W. A. Benton and R. F. Walker, both of Baton Rouge, for appellant.

Taylor, Porter & Brooks and C. C. Bird, all of Baton Rouge, for appellee.

MOUTON, J.

Muse Watson was killed January 15, 1931, in a collision between a Ford car he was driving and a Buick sedan driven by Mundinger, defendant.

This suit is brought in damages against defendant for $20,775 by plaintiff, as tutor, for the benefit of two minors of deceased.

The accident occurred at the intersection of the Joor and Hooper roads in the parish of East Baton Rouge. The Hooper road runs east and west, the Joor road, north and south.

Mundinger, defendant, was traveling north on the Joor road and Muse Watson, deceased, westward on the Hooper road. The collision happened about 10:30 in the morning, on a cold and clear day.

Reiner Swart, civil engineer, witness for plaintiff, made a map of the scene of the wreck which was filed in evidence. He testifies that the Joor road up to 95 feet south of the intersection of that road with the Hooper road is 28 feet from shoulder to shoulder; and then says: "And it widens out in the next twenty-five feet to about seventy feet on the east and an average width of about sixty-five or seventy feet on the west." He further states, just on the south of the center line of the intersection which you might call "the intersection proper of those two roads is about seventy feet wide by an average width of 140 feet long."

The defendant says that, when he approached the intersection, he had relaxed his speed from 35 to 30 miles an hour, and, when he got to approximately 55 feet from the center of the intersection, he saw the Muse Watson car coming in a westerly direction and which was then 130 feet from the center of the intersection; that not thinking the car was coming at a dangerous rate of speed he continued his course at about 30 miles an hour up to approximately 15 feet from the center of the intersection when realizing that the car was moving at a very rapid rate of speed he applied his brakes, lightly, with the intention of stopping his car before the other had reached the intersection; that he came practically to a stop but had reached about the center of the intersection when he speeded up for the purpose of crossing the intersection ahead of the other car. His testimony is that, when the Watson car came up to the crossing, at about the same time, it turned northwestward, and that the collision occurred between the right and left fenders of the two cars at approximately 15 feet north of the center line of the intersection.

The evidence shows that about 75 or 100 feet south of that intersection the wide spaces on both sides of the Joor road going northward open gradually in a fan-shaped form and that on the side east of that road, not far from where it intersects the Hooper road, there was a store building, also a Coca-Cola sign board at the time of the collision.

Swart, the civil engineer to whose testimony we have hereinabove referred, testified that a person 55 feet from the center of the intersection could see a car coming in a westerly direction, that is, eastward at about 125 feet "unimpaired," but that from 125 to 165 feet the vision would be impaired by the Coca-Cola sign board.

Defendant says, when he saw what proved after to be the Watson car, he was then 55 feet from the center of the intersection and that the other car coming westward was then approximately at 130 feet from the center of the intersection. Hence, the estimate by Swart of the distance a car could be seen coming westward on the Hooper road is in keeping with the statement of defendant on that subject when he says he saw the other car then about 130 feet from the intersection. There can be no question that in such a wide open space the Watson car could be and was seen by defendant at the distance to which he testified.

Defendant says he was traveling at 30 miles an hour when he approached the intersection, then slackened his speed almost to a stop, and then speeded up across the intersection to avoid the collision.

The testimony of Robertson, proprietor of the store situated east of the Joor road, as above explained, is that defendant, when he passed near his store going towards the intersection, was then traveling at about 30

miles an hour, this being the rate of speed at which, according to defendant's testimony, that he was going at the time. Regarding the speed at which defendant was traveling when he passed the store, his testimony is in perfect accord with that of Robertson who was a witness for plaintiff.

Mrs. Gilmore, another witness for plaintiff, testified that defendant's car "whizzed" as it passed the store where she happened to be at the time, and estimates defendant's speed then about 45 or 50 miles an hour. This lady also said she had seen the collision between the two cars and that it had occurred under a catalpa tree which the testimony and maps in the record show was several feet west of the point where the collision actually occurred. We think that more reliance should be placed on the testimony of Robertson than on that of Mrs. Gilmore.

We say this because Robertson, who testifies that he saw when the cars collided, fixes the point of impact north of the "center of the two roads at the point of intersection" which the preponderance of the evidence shows was the place of the impact. Robertson says, however, that defendant was going at about 30 miles an hour when the collision occurred. In that respect his evidence is completely at variance with that of defendant, who testified that he slackened his speed at almost the stopping point when he entered the intersection and then speeded up his car to cross the intersection ahead of the Watson car. It is obvious, that he could not have increased his speed from a state of practical immobility to 30 miles an hour in the short distance which intervened between the point where he thus accelerated his speed to the point of contact about 15 feet north of the intersection. If he was then going at 30 miles an hour, seeing as he must have seen the other car advancing towards him, we think, he was then at fault; and even, taking his version of the occurrence, if he stopped his car and then accelerated his speed in the vain hope of crossing in time, he was still at fault because he should have diverted his course westward in the open space of the intersection, thus permitting the other car to proceed safely over the Hooper road.

This brings us now to the consideration of the evidence in reference to the operation of the Muse Watson car on that occasion.

■■ Counsel for plaintiff refers to section 20 of Act No. 296 of 1928, page 628, which is as follows: "(a) When two vehicles approach or enter an intersection at approximately the same time, the driver of the vehicle on the left shall yield the right-of-way to the vehicle on the right. * * * The driver of any vehicle traveling at an unlawful speed shall forfeit any right-of-way which he might otherwise have hereunder."

Much discussion is devoted in the briefs of counsel for plaintiff and defendant as to which of the two cars entered the intersection first. The oral testimony and the maps show that the car of the defendant was on the left and that of plaintiff on the right. Under the provisions of above section the right of way was in favor of Muse Watson who was driving westward on the Hooper road, and was therefore on the right side of the intersection.

We shall proceed to a decision of the case granting the right of way to Watson under the foregoing provisions of the statute, although the preponderance of the evidence points strongly to the fact that defendant actually entered the intersection first which would have given defendant a right of preemption over the intersection that Watson would have been bound to respect.

We will, however, in passing over the issues, recognize the right of way in favor of Watson, but in doing this we must take into consideration, as an important factor in the solution of the issues presented, the following qualification of the above quoted section where it says:

"The driver of any vehicle traveling at an unlawful speed shall forfeit any right-of-way which he might otherwise have thereunder."

This part of that section provides for a forfeiture of this right of way by the driver on the right if he is driving at an unlawful rate of speed. This provision for the forfeiture of that right is in line with the rule of the common law in reference to a driver of a motor vehicle who has the right of way at an intersection, which is expressed as follows:

"The right of the driver who has the right so given is not exclusive; but on the contrary is at all time relative and subject to the fundamental common law doctrine, that he must use the right so as not to injure another. He is not absolved from the duty imposed by statute to have his car under control and to operate it at a reasonable and proper rate of speed in approaching an intersection; nor from the common law obligation to use reasonable care to avoid colliding with travelers approaching from the left, or proceeding on the disfavored street, if the latter disregard such right of way." Cyclopedia of Automobile Law by Blashfield, c. 22, § 20, p. 490; § 25, p. 492.

This author says further: "If the driver discovers that the other driver does not intend to yield the right of way, or intends to take precedence and that a collision will likely occur, he cannot recklessly proceed, but is bound to stop or turn aside, if in the exercise of ordinary care for his own safety he can do so."

Act No. 296 of 1928, § 5, provides that "any person driving a vehicle on a highway shall

drive the same at a careful and prudent speed not greater than is reasonable and proper" etc.

In referring to the right of way so granted by law, the rule above quoted says, the driver "is not absolved from the duty imposed by the statute to have his car under control and to operate it at a reasonable and proper rate of speed * * * to avoid colliding with travelers approaching from the left," etc.

In thus stating the rule, above reproduced, on page 492, Blashfield says, as follows: "Too firm an insistence upon the right of way, even when one is clearly entitled to it, may be the grossest kind of negligence."

Under our statute, section 5 and in other of its provisions, it is clear that it is intended that motor vehicles should be driven on our highways at a speed "prudent, reasonable and proper," and that no driver is absolved from these general obligations imposed by the statute whether he has entered the intersection first or has the right of way because he approaches it from the right as against another who enters it from the left. The right of the one who has this right of way is not exclusive, but is relative and must be exercised subject to the rule "that he must use the right so as not to injure another."

With the foregoing statement of the rule of law which should govern the issues herein, we shall take a view of the situation of the two cars before and at the time of the collision and the rate of speed at which Muse Watson must have been traveling at or about the time he reached the intersection and collided with defendant's car.

We have before referred to the wide open graveled spaces on the east and west side of the Joor road going north and which reached along the southern line of the Hooper road up to the intersection on the east and beyond on the west thereof.

Swart says that the visibility of both drivers of cars, one going north on the Joor road and the other traveling west on the Hooper road, is about equally good, a little advantage however he recognized in favor of the driver traveling northward. But he says it is certain that both of the drivers so traveling could see each other and no doubt without any difficulty whatsoever considering the wide open space that exists at that intersection, hereinabove referred to.

Defendant says, when he got to about 15 feet from the intersection, he realized that the Watson car was going at a terrific rate of speed which he fixed between 50 and 60 miles an hour.

Robertson testifies that the back door of his store which points to the east, the direction the Watson car was coming, was open at the time it passed on its way westward. The hum of its engine, he testifies, attracted his attention and he estimated the rate of speed at which it was then moving, between 50 and 60 miles an hour.

It is shown that the defendant's sedan weighed 3,500 pounds and Watson's Ford 2,500 pounds. After its collision with the heavier car, the Watson car, the evidence shows, continued across the road, jumped the ditch on the west side of the Joor road north of the intersection, drove its radiator into the bank of a ditch, and threw its hood over and across the wire fence into an adjoining field. It continued with such force after the impact that it hooked defendant's sedan, pulled it along, and turned it in the direction opposite to the one it was going.

It is true that it is doubtful if Robertson could have fixed with any degree of certainty the rate of speed at which the Watson car was traveling when it went by his store, basing this estimate of 50 or 60 miles an hour, as he did, on the humming noise the engine was making. Although we do not think he could make an accurate estimate of its speed on that basis, the fact that his attention was attracted by the noise the car was making, indicates, however, that it was going at a rapid, if not an unusual speed.

It is also true that it was equally difficult for defendant to say with any degree of certainty that the car was coming towards him at 50 or 60 miles an hour just before it reached the intersection. Although that be true, he could, however, see that it was then moving at an excessive rate of speed, "terrific" as he describes it. This estimate of Robertson and defendant of the speed the Watson car was making before and at the time of the collision is, however, strongly supported by the physical facts to which we have referred, which show the way the Watson car continued on its journey after the collision, jumping a ditch, turning a heavier car from its course into a direction opposite to the one it was traveling, burying its radiator in the bank of a ditch, and throwing its hood over a wire fence into an adjoining field. Unquestionably, that car was going at an unusual, excessive, and unlawful speed and from the physical facts of the case, taken in connection with the estimate of its speed by Robertson and defendant, no other than the foregoing conclusion can be reached.

The day was clear and in the open spaces around that intersection there can be no question that Watson could and must have seen the defendant's car as it was approaching that intersection. Watson did not have the exclusive right over that highway and was not absolved of driving his car with the care commensurate with existing conditions. The collision was unquestionably the result of his fast or reckless driving; he was at fault and so was defendant, otherwise no collision would have occurred on that occasion.

Both parties being at fault, neither could recover in damages, and no citation of authorities is necessary to support this rule of law.

The demand of the plaintiff was correctly rejected.

Judgment affirmed.